**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| MARY HILL,<br><br>                                Plaintiff,<br><br>v.<br><br>NATIONSTAR MORTGAGE, LLC d/b/a<br>CHAMPION MORTGAGE and RAS TRUSTEE<br>SERVICES, LLC,<br><br>                                Defendants. | Civil Action No. 3:22-cv-108 |

## VERIFIED COMPLAINT

Plaintiff Mary Hill, by counsel, files her Verified Complaint against Defendants Nationstar Mortgage, LLC d/b/a Champion Mortgage ("Champion") and RAS Trustee Services, LLC ("RAS") (together, "Defendants"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Mary Hill is 76 years old and, like many Americans, lives on a fixed income comprised only of social security benefits. Needing to supplement that minimal income, Ms. Hill obtained a reverse mortgage on her home in Petersburg, Virginia, where she has lived for over thirty years.

2.      Under the terms of her reverse mortgage, Ms. Hill owed no monthly payments on the loan. Instead, the lender would recover the money that Ms. Hill obtained from the loan after selling the property upon her death.

3.      In late 2018, however, Champion started charging Ms. Hill for forced-placed insurance because her home was in a flood plain. Because of her fixed income, Ms. Hill could not

afford to pay the premium at once. Instead. she agreed to a repayment plan to resolve the outstanding balance

4.      Even though Ms. Hill complied with the repayment plan, Champion erroneously referred Ms. Hill's loan to foreclosure, in violation of HUD Mortgagee Letter 2015-11. *See* https://www.hud.gov/sites/documents/15-11ML.PDF (last visited February 18, 2022).

5.      As soon as she learned of the impending loss of her home, Ms. Hill contacted Champion, hoping to resolve the delinquency. Champion represented to Ms. Hill that it would stop the foreclosure if she was able to pay just over $1,000.00.

6.      Even after Ms. Hill paid that amount, Champion foreclosed on her home, and in the process, failed to provide her with the appropriate foreclosure notices required under her Deeds of Trust and Virginia law.

7.      As a result, Ms. Hill alleges breach of contract against Champion, the owner of her loan, for breaching the repayment plan.

8.      She also alleges that Champion committed fraud for misrepresenting that it would stop the foreclosure if she paid the requested sum.

9.      Ms. Hill further alleges claims against RAS, the trustee that conducted the foreclosure sale, for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f(6), by foreclosing on Ms. Hill's home when there was no present right to possession of the property.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Ms. Hill's FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

11.    This Court has supplemental jurisdiction over Ms. Hill's state law claims under 28 U.S.C. § 1367.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Hill's claims occurred in this District.

## PARTIES

13.    Ms. Hill is a natural person residing in this District and Division. She is also a "consumer" under the FDCPA, 15 U.S.C. § 1692a(3).

14.    Champion is a foreign limited liability company with its principal place of business in Dallas, Texas, operating as a mortgage servicer in Virginia.

15.    RAS is a limited liability company with its principal place of business in Chesapeake, Virginia. It is a debt collector under the FDCPA, 15 U.S.C. § 1692a(6), because it uses interstate commerce and the mails in its business, the main purpose of which is the enforcement of security interests.

## FACTS

16.    Ms. Hill purchased her home in 1978 and has lived there since.

17.    Ms. Hill took out a reverse mortgage in March 2009. Under the Note for this reverse mortgage, Ms. Hill received a line of credit, but she did not make—and was not required to make—any monthly payments towards the outstanding balance. Instead, any amount due would be payable either on May 20, 2095 or upon certain other events, like Ms. Hill's death, a sale of the property, or a default under the Note.

18.    Ms. Hill's mortgage was insured by the FHA under the National Housing Act, meaning that the lender would not suffer a loss if there was a deficiency after a foreclosure sale.

19.    Champion was the owner and servicer of  Ms. Hill's reverse mortgage.

20.     In 2018, Champion assessed forced-placed flood insurance and applied it to Ms. Hill's mortgage.

21.     Rather than adding the forced-place insurance premium to her line of credit, Champion required that Ms. Hill pay the premium—a little over $1,000.00

22.     But Ms. Hill could not afford the premium because of her fixed income.

23.     Champion told Ms. Hill that it considered her loan in default and that it would begin foreclosure if she did not cure the default.

24.     To save her home and avoid homelessness, Ms. Hill entered into a repayment arrangement with Champion to cure the default by paying $34.17 a month until July 2019.

25.     In August 2019, because Champion made another flood insurance premium payment, her repayment plan amount was increased to $60.20.

26.     In December 2020, her repayment plan increased to $100.00 a month because Champion had made yet another flood insurance premium.

27.     Ms. Hill made all required repayment plan payments. Champion continued to accept her payments and applied them towards the loan's delinquent balance.

28.     Even though Ms. Hill complied with the repayment plan, Champion erroneously referred Ms. Hill's loan to foreclosure, in violation of HUD Mortgagee Letter 2015-11. *See* https://www.hud.gov/sites/documents/15-11ML.PDF (last visited February 18, 2022).

29.     In October 2021, Ms. Hill received a notice from Robertson, Anschutz, Schneid, Crane & Partners, PLLC, stating that her home was scheduled to be sold at a foreclosure sale by RAS on December 6, 2021.

30.     This notice stated that it was being made in accordance with Virginia Code § 55.1-321.

31.     Yet the notice lacked certain information required by Virginia Code § 55.1-321, including the date of Ms. Hill's late payment and the total amount of principal, interest, costs, and fees due in arrears.

32.     As a result, because the proper notice was not sent, foreclosure of the property was not permitted under Va. Code § 55.1-321(a).

33.     When Ms. Hill received this notice, she was confused and worried. She had been making payments as required by her payment plan with Champion and she had nowhere to live if she lost her home.

34.     Ms. Hill called Champion to asked how she could avoid foreclosure.

35.     As soon as she learned of the impending loss of her home, Ms. Hill contacted Champion to try to resolve the delinquency. Champion represented to Ms. Hill that it would stop the foreclosure if she was able to pay $1,043.41.

36.     In reliance on Champion's representation, Ms. Hill paid $300.00 herself from her fixed social security income. Desperate to save her home, she was able to borrow the remaining $743.41 from friends and family to make the payment by the end of November, 2021.

37.     This resulted in her default balance being $2,000 as of December 1, 2021. As far as Ms. Hill knew based on her communications with Champion, this would prevent the foreclosure of her home.

38.     And, Champion could have rescinded the foreclosure notice, pursuant to HUD Mortgagee Letter 2016-if she was able to bring the balance of the default to $2,000 or less. *See* https://www.hud.gov/sites/documents/16-07ML.PDF (last visited February 18, 2022).

39.     Presumably, Champion provided her with an *exact* amount to pay so that her default balance would be $2,000, at which time Champion could rescind the sale notice.

40.     Nonetheless, Champion never sought to rescind the foreclosure notice.

41.     Champion foreclosed on her home anyway, and in the process, failed to provide Ms. Hill with the appropriate foreclosure notices required under her Deeds of Trust and Virginia law.

42.     As a result, Ms. Hill alleges breach of contract against Champion, the owner of her loan, for breaching her repayment plan.

43.     She also alleges that Champion committed fraud for misrepresenting that it would stop the foreclosure if she paid $1,043.41 to get her default balance to $2,000.00.

RAS foreclosed on Ms. Hill's home on December 6, 2021.

44.     Because of Defendants' improper conduct, Ms. Hill has suffered significant damages including: (1) the future value and equity in the property; (2) the loss of her home; (3) out of pocket expenses; and (4) emotional distress.

## COUNT ONE:
## BREACH OF CONTRACT
### (As to Champion)

45.     Ms. Hill incorporates the preceding allegations.

46.     As described above, the repayment plan that Champion proposed to Ms. Hill constituted a valid offer.

47.     Ms. Hill accepted Champion's offer and made the required monthly payments.

48.     Ms. Hill's continued payments constituted consideration. By making those payments, Plaintiff gave up the ability to pursue other ways to save her home, like filing for bankruptcy, refinancing, or seeking a loan modification.

49.     By failing to honor the repayment plan and sending Ms. Hill's mortgage to foreclosure, Champion breached its contract with Ms. Hill, including the HUD regulations and guidance that are incorporated into her Deeds of Trust.

50.     Ms. Hill remains performed on the contract by making timely payments under the repayment plan.

51.     Ms. Hill has suffered harm because of Champion's breach. By making the repayment plan payments, Ms. Hill forewent other remedies that might have been pursued to save her home, like restructuring her debt under the bankruptcy code, seeking a loan modification, or refinancing her house, or pursuing other strategies to deal with his default, like selling the home. She also suffered an illegal foreclosure of his property by Champion and was assessed improper foreclosure and default-related fees.

52.     Because of Champion's breach of contract, Ms. Hill requests that the Court award her actual damages, reinstatement of her mortgage, rescission of the foreclosure sale, and specific performance of her repayment plan.

<u>**COUNT TWO:**</u>
**FRAUD OR CONSTRUCTIVE FRAUD**
**(As to Champion)**

53.     Ms. Hill incorporates the preceding allegations.

54.     As explained above, Champion made fraudulent representations to Ms. Hill when it told her that she could stop the foreclosure if she made a $1,043.41 payment.

55.     In the alternative, Champion willfully failed to disclose that it would not exercise its discretion to rescind the notice of the foreclosure sale even if Ms. Hill made payment.

56.     In the alternative, Champion made the fraudulent representation with reckless abandon and intent for the truth.

57.     Champion's representations were untrue: it foreclosed on Ms. Hill's property on December 6, 2021.

58.     Upon information and belief, Champion knew that its representations were untrue because the foreclosure sale was never put on hold and Champion had no intent to cancel the foreclosure sale unless Ms. Hill cured the entire delinquent balance.

59.     It was reasonable for Ms. Hill to rely on the misrepresentation because Champion is the servicer of her reverse mortgage.

60.     Ms. Hill relied on Champion's misrepresentations and omission when she made a significant monetary payment towards the loan and decided not to pursue other avenues of saving her home.

61.     If Ms. Hill had known of Champion's misrepresentations or omissions, she would have used other means to prevent the foreclosure sale.

62.     Champion knew, or should have known, that Ms. Hill was relying on its representations because Ms. Hill told the Champion representative that she was trying to save her home from foreclosure.

63.     Champion's representations about stopping the foreclosure sale were false because it continued with the foreclosure on December 6, 2021 even though Ms. Hill made the $1,043.41 payment as Champion instructed her to do.

64.     Champion made this false statement of material fact with the intent to deceive Ms. Hill so that it could foreclose on his home and collect the insurance under the National Housing Act. Champion's actions were willful and done for its pecuniary benefit.

65.     In the alternative, Champion negligently misrepresented the status of the foreclosure sale and is therefore liable for constructive fraud.

66.     As a result of Champion's conduct, Ms. Hill suffered actual damages, including the loss of her property, embarrassment; humiliation; and other emotional distress associated with the foreclosure sale.

67.     Ms. Hill is entitled to damages, including punitive damages because Champion's conduct was willful, wanton, malicious, and deliberate.

68.     In the alternative, if Champion made the misrepresentations identified above innocently or negligently, Champion made those misrepresentations with the intent that Ms. Hill rely on those representations.

69.     Ms. Hill relied on Champion's representations to her detriment and she has suffered damages because of Champion's conduct including: (1) the future value and equity in the property; (2) the loss of her home; (3) embarrassment; humiliation; and other emotional distress associated with the foreclosure sale; and (4) out of pocket expenses.

**COUNT THREE:**
**Violation of FDCPA, 15 U.S.C. § 1692f**
**(As to RAS)**

70.     Ms. Hill incorporates the preceding allegations.

71.     RAS violated 15 U.S.C. § 1692f(6) by foreclosing on Ms. Hill's home when there was no present right to possession of the property.

72.     First, Ms. Hill was in a repayment plan with Champion that prevented the foreclosure sale of her home.

73.     Second, neither Champion nor its agents ever sent Ms. Hill a notice that complied with Va. Code § 55.1-321.

74.     RAS therefore did not have proof that the notice had been sent and there was no right to foreclose on Ms. Hill's home. Va. Code 55.1-321(A).

75.     Even though it did not have proof of a compliant notice, RAS foreclosed on Ms. Hill's home anyway.

76.     Because of RAS's violations of 15 U.S.C. § 1692f(6), Ms. Hill suffered actual damages, including the loss of her home and significant emotional distress.

77.     Based on RAS's violation of § 1692f(6), Ms. Hill is entitled to actual damages, statutory damages, reasonable attorneys' fees, and costs under 15 U.S.C. § 1692k.

WHEREFORE, Ms. Hill requests that the Court enter judgment against Defendants as follows: (1) for rescission of the improper foreclosure; (2) order the specific performance of the repayment plan; (3) declare the foreclosure sale of Ms. Hill's home void or in the alternative, voidable, and impose a resulting trust or in the alternative, a constructive trust for her benefit so that her home can be deeded back to her; (4) award actual and additional statutory damages as pleaded above; (5) award attorneys' fees, litigation expenses, and costs of suit; (6) award punitive damages for her fraud claim; and (7) any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**MARY HILL**

By:_____*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com

Jessica W. Thompson (VSB 75514)
Central Virginia Legal Aid Society
101 W. Broad Street, Suite 101
Richmond, Virginia 23220
(804) 200-6037 – Telephone
(804) 649-8794 – Facsimile
Email: jessica@cvlas.org
*Counsel for Plaintiff*

## VERIFICATION

    I, Mary Hill, being first duly sworn hereby depose and say as follows: I am the Plaintiff in the foregoing lawsuit, I have read the attached Complaint, and the matters and things alleged therein are true of my own knowledge and belief, save and except those matters alleged upon information and belief, and as to those, I believe them to be true.

_Mary Lou Hill_
MARY HILL

Subscribed and sworn to before me by Mary Hill this 22 day of February 2022.

NOTARY PUBLIC

MY COMMISSION EXPIRES: 10-31-2025



12