IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

MARY HILL,
    Plaintiff,

v.                                                                                Civil No. 3:22cv108 (DJN)

NATIONSTAR MORTGAGE LLC,
*d/b/a* CHAMPION MORTGAGE, LLC *et al.*,
    Defendants.

## **MEMORANDUM OPINION**

This matter comes before the Court on Defendant RAS Trustee Services, LLC's ("RAS" or "Defendant") Motion to Dismiss (the "Motion to Dismiss" or the "Motion") (ECF No. 23), moving the Court to dismiss Plaintiff's Verified Amended Complaint (the "Amended Complaint" or "Am. Compl.") (ECF No. 21), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Mary Hill ("Plaintiff") responded to the Motion to Dismiss (ECF No. 28), and RAS replied (ECF No. 30). The Motion to Dismiss now stands ripe for adjudication. For the reasons stated below, the Court will DENY the Motion (ECF No. 23).

### I.     BACKGROUND

Plaintiff's allegations arise out of the reverse mortgage that Plaintiff executed on her longtime home in Petersburg, Virginia in the spring of 2009. (Am. Compl. ¶¶ 1-9.) Defendant Nationstar Mortgage, LLC d/b/a Champion Mortgage ("Champion") provided and serviced Plaintiff's reverse mortgage, which was secured by a deed of trust on Plaintiff's home. (Def.'s Mem. Supp. Mot. Dismiss ("Mot.") (ECF No. 24-1) Ex. A.) Defendant RAS served as substitute trustee for Champion under the deed of trust and, at Champion's request, undertook nonjudicial foreclosure proceedings on Plaintiff's home in late 2021. (Am. Compl. ¶¶ 76-79.) In her

Amended Complaint, Plaintiff alleges that RAS foreclosed on her property without providing proper notice under Virginia Code § 55.1-321(A). (Am. Compl. ¶ 77-78.) Plaintiff claims that the foreclosure therefore violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), as RAS lacked a present right to possession of the property. (Am. Compl. ¶¶ 76-81.)

### A. Factual Allegations[1]

In March 2009, Plaintiff executed a reverse mortgage (the "Mortgage" or the "Reverse Mortgage") on her longtime home in Petersburg, Virginia. (Am. Compl. ¶¶ 20-21.) Defendant Champion originated, underwrote and serviced the Mortgage. (Am. Compl. ¶ 23.) Under the Mortgage's terms, Plaintiff received a line of credit from Champion, while Champion received a deed of trust note (the "Note") in the amount of $199,500, secured by a deed of trust (the "Deed of Trust") on Plaintiff's home. (Mot. Ex. A at 1.) In keeping with reverse mortgages generally, Plaintiff's Reverse Mortgage required no monthly principal or interest payments on Plaintiff's part.[2] (Am. Compl. ¶ 21.) Rather, any amount due on Plaintiff's line of credit, whether principle or interest, "would be payable either on May 20, 2095, or upon certain other events, like Ms. Hill's death, a sale of the property, or a default under the Note." (Am. Compl. ¶ 21.)

Pursuant to the Deed of Trust, Plaintiff conveyed her interest in her home to the Trustee, Tomlin Temple PC ("Temple" or the "Trustee"), to be held in trust to secure payment on the

---

[1] For purposes of a Rule 12(b)(6) motion to dismiss, the Court must accept the well-pleaded factual allegations in a plaintiff's complaint as true and draw all reasonable inferences from those factual allegations in favor of the plaintiff. *Kensington Volunteer Fire Dep't v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

[2] As will become relevant shortly, Plaintiff's Reverse Mortgage did, ultimately, require monthly payments from Plaintiff. Plaintiff's Mortgage was insured by the Federal Housing Administration ("FHA") under the National Housing Act. (Am. Compl. ¶ 22.) Thus, in the event that Champion purchased flood insurance on Plaintiff's behalf pursuant to 12 C.F.R. § 339.7, Champion was entitled to assess on Plaintiff the premium payments required to maintain the flood insurance. (Am. Compl. ¶ 24.)

2

Note. (Mot. Ex. A at 4.) The Deed of Trust provided the Trustee with, *inter alia*, the power to conduct nonjudicial foreclosure proceedings in the event of Plaintiff's default. (Mot. Ex. A at 1.) The Deed of Trust further provided that Champion, at its discretion, could remove Temple as trustee and appoint a substitute trustee, on whom Champion could confer "all of the title, power and duties conferred upon the [original] Trustee in the deed of trust." (Mot. Ex. A at 4.)

From 2009 until 2018, Plaintiff utilized her line of credit without incident. (Am. Compl. ¶¶ 21-24.) Then, in 2018, Champion purchased flood insurance on Plaintiff's behalf as required by FHA regulations. 12 C.F.R. § 339.7; (Am. Compl. ¶ 24.) Pursuant to the Mortgage's terms, Champion assessed the insurance premium — a sum in excess of $1,000 — on Plaintiff. (Am. Compl. ¶ 25.) Because Plaintiff, a senior citizen, received only a modest, fixed income, she could not make the required lump-sum premium payment. (Am. Compl. ¶ 26.) When Plaintiff failed to pay the insurance premium, Champion informed Plaintiff that it "considered her loan in default" and "would begin foreclosure [proceedings] if she did not cure the default." (Am. Compl. ¶ 27.) To avoid foreclosure, Plaintiff negotiated a repayment arrangement with Champion whereby Plaintiff agreed to pay $34.17 per month until July 2019. (Compl ¶ 28.)

Over the following two years, Champion paid two additional flood insurance premiums on Plaintiff's behalf. (Am. Compl. ¶¶ 29-30.) As a result of these payments, Plaintiff's default balance increased substantially. (Am. Compl. ¶¶ 29-30.) Champion therefore lengthened Plaintiff's repayment arrangement and increased the monthly payment to $100. (Am. Compl. ¶¶ 29-30.) Although Plaintiff continued to make monthly payments pursuant to her repayment arrangement, Champion erroneously referred Plaintiff's Reverse Mortgage to foreclosure in the late summer or early fall of 2021.[3] (Am. Compl. ¶ 32.)

---

[3] Plaintiff fails to identify an exact date on which Champion referred her Mortgage to foreclosure.

3

On September 16, 2021, Champion removed Temple as trustee of the Deed of Trust and appointed RAS as substitute trustee. (Mot. Ex. A at 4-5.) Shortly thereafter, Plaintiff received a letter from RAS (the "Notice") stating that RAS, now serving as substitute trustee, intended to sell Plaintiff's home at a foreclosure sale on December 6, 2021. (Am. Compl. ¶ 33.) In pertinent part, the Notice stated the following:

This Notice is being given to you pursuant to Virginia Code § 55.1-321.

...

In accordance with the terms of the Deed of Trust and applicable law, the Substitute Trustee will conduct a sale of the Property on December 06, 2021, at 11:00AM at the entrance to the Circuit Court Building for the City of Petersburg, 7 Courthouse Avenue, Petersburg, VA 23803.

...

**This is a communication from a debt collector. This is an attempt to collect a debt and any information obtained may be used for that purpose. However, if you are currently in bankruptcy, or if you have been granted a bankruptcy discharge, this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for the debt.**

(Mot. Ex. A at 1) (emphasis in original). The Notice provided no information related to the date of Plaintiff's late payment or the total amount of principal, interest, costs or fees due in arrears. (Am. Compl. ¶ 35.)

After receiving the Notice, Plaintiff contacted Champion in the hope of avoiding foreclosure. (Am. Compl. ¶¶ 38-39.) "Champion represented to [Plaintiff] that it would stop the foreclosure if she was able to pay $1,043.41." (Am. Compl. ¶ 39.) Using a combination of personal funds and loans from friends and family, Plaintiff paid the requested sum in late November 2021. (Am. Compl. ¶ 40.) As of December 1, 2021, Plaintiff's default balance with Champion therefore amounted to $2,000. (Am. Compl. ¶ 41.) Notwithstanding Plaintiff's payment, however, neither Champion nor RAS rescinded the Notice. (Am. Compl. ¶ 44.) RAS

4

subsequently foreclosed on Plaintiff's home on December 6, 2021. (Am. Compl. ¶ 48.)

In the Amended Complaint, Plaintiff alleges in Count One that Champion breached its contract with Plaintiff by failing to honor the repayment plan. (Am. Compl. ¶¶ 50-57.) Plaintiff further alleges in Count Two that Champion fraudulently misrepresented that it would rescind the foreclosure Notice if Plaintiff paid Champion $1,043.41. (Am. Compl. ¶¶ 58-74.) Finally, and relevant here, Plaintiff alleges in Count Three of her Amended Complaint that RAS violated the FDCPA when it foreclosed on Plaintiff's home. (Am. Compl. ¶¶ 75-81.) Specifically, Plaintiff claims that RAS "violated 15 U.S.C. § 1692f(6) by foreclosing on [Plaintiff]'s home when there was no present right to possession of the property." (Am. Compl. ¶ 76.) RAS lacked a present right to possession, in Plaintiff's telling, because it failed to provide proper notice under Virginia Code § 55.1-321. (Am. Compl. ¶¶ 75-81.)

Plaintiff seeks (1) rescission of the foreclosure, (2) specific performance of the repayment plan, (3) declaratory relief pronouncing the foreclosure sale void or voidable and the imposition of a constructive trust such that Plaintiff's Petersburg home can be deeded back to her, (4) actual and statutory damages, (5) attorneys' fees, litigation expenses and costs, and (6) punitive damages. (Am. Compl. at 10.)

### B. Procedural Background

On February 23, 2022, Plaintiff filed her initial Complaint (the "First Complaint"). (ECF No. 1.) RAS filed its first Motion to Dismiss on March 18, 2022 (ECF No. 10.), and Champion answered the First Complaint on April 29, 2022 (ECF No. 20). On May 20, 2022, Plaintiff filed her Amended Complaint. (ECF No. 21.) On June 3, 2022, RAS filed its Motion to Dismiss the Amended Complaint. (ECF No. 23.) Plaintiff responded on June 17, 2022 (ECF No. 28), and RAS replied on July 8, 2022 (ECF No. 30). RAS' Motion to Dismiss the Amended Complaint

stands ripe for decision. For the reasons that follow, the Court will DENY the Motion.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court resolves factual contests, determines the merits of a claim or addresses potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

6

### III. ANALYSIS

RAS challenges the sufficiency of Plaintiff's allegations under Count Three on several grounds. Assuming all factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that none of RAS' arguments warrant the dismissal of Count Three of the Amended Complaint. Accordingly, the Court will DENY Defendant's Motion.

#### A. The FDCPA Generally

"The FDCPA protects consumers from abusive and deceptive debt collection practices." *Ben-Davies v. Bilbaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017). To that end, the Act states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1629f. To state a claim under the FDCPA, a plaintiff must sufficiently allege that "(1) the defendant constitutes a debt collector as defined by the FDCPA; (2) the plaintiff was the object of collection activity arising from a consumer debt as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Walker v. Hill*, 2021 WL 1062238, at *10 (E.D. Va. Mar. 19, 2021).

#### B. Plaintiff's Allegations

In Count Three of her Amended Complaint, Plaintiff alleges that RAS violated Section 1692f(6)(A) of the FDCPA, which provides that a debt collector may not take or threaten "to take any nonjudicial action to effect dispossession or disablement or property" where "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6)(A). Plaintiff alleges that RAS lacked a "present right to possession" of her Petersburg home when RAS, acting as substitute trustee for Champion, sold Plaintiff's home via foreclosure sale in December 2021. (Compl. ¶ 76.) As the Court understands it, Plaintiff's logic proceeds as follows.

First, Plaintiff contends that because the FDCPA leaves the phrase "present right to

7

possession" undefined, courts must look to state law to determine whether a debt collector properly asserted a present right to possession over dispossessed property. (Resp. at 4) (citing *Richards v. PAR, Inc.*, 954 F.3d 965, 968 (7th Cir. 2020)). Plaintiff argues that the relevant state statute here is Virginia Code § 55.1-321, which sets forth the information that a foreclosing trustee in Virginia must convey to a property owner before the trustee, acting under the terms of a deed of trust, sells her property. (Compl. ¶¶ 35-36, 76-79.)

Plaintiff alleges that the Notice that she received in October 2021 provided some, but not all of the information required by § 55.1-321, as it failed to inform Plaintiff of the date of her late payment and "the total amount of principal, interest, costs, and fees due in arrears." (Compl. ¶ 35.) In Plaintiff's view, RAS therefore violated the notice requirements set forth in § 55.1-321(F). And in foreclosing under the Deed of Trust without having fulfilled § 55.1-321's notice requirements, Plaintiff argues, RAS took nonjudicial action to effect dispossession of property with "no present right to possession" over the property, thereby violating § 1692f(6)(A) of the FDCPA. (Compl. ¶¶ 76-80.)

### C. RAS' Motion

RAS raises five arguments in support of its Motion to Dismiss Count Three. First, RAS asserts that Plaintiff's FDCPA claim fails, because "it is based on the false premise that a violation of [Virginia Code § 55.1-321] necessarily constitutes a violation of the FDCPA." (Mot. at 5.) Second, RAS argues that even if Plaintiff properly premises her FDCPA claim on a violation of § 55.1-321, Plaintiff cannot make out a claim under § 55.1-321 itself, as RAS complied with all relevant provisions of the Virginia statute. (Mot. at 5.) Third, RAS argues that the Amended Complaint "fails to allege that RAS engaged in debt-collection activity" as required to plead the prima facie case under the FDCPA. (Mot. at 7-10.) Fourth, RAS argues

that two affirmative defenses to contract formation — the statute of frauds and the consideration requirement — bar Plaintiff's claims. (Mot. at 10-12.) Fifth and finally, RAS argues that "any claim Plaintiff may have for emotional distress damages is barred by the settled law" of the Fourth Circuit, "which holds that foreclosure upon one's home cannot support a claim for intentional infliction of emotional distress." (Mot. at 2.) The Court addresses each argument seriatim, finding that all five lack merit.

### 1. Plaintiff May Premise Her FDCPA Claim on Defendant's Alleged Failure to Comply with Virginia Code § 55.1-321

Defendant first argues that Plaintiff's claim fails because it rests "on the false premise that . . . a violation of [Va. Code § 55.1-321] necessarily constitutes a violation of the FDCPA." (Reply at 2.) Defendant contends that Plaintiff cannot bootstrap an FDCPA claim on to an alleged violation of state law, because "the FDCPA may not be used as a means to enforce such [state] statutes." (Reply at 2) (citing *Richards v. New Rez, LLC*, 2022 WL 657568, at *19 (D. Md. Mar. 4, 2022)). Defendant's argument both mischaracterizes Plaintiff's FDCPA claim and contradicts compelling caselaw from across the lower courts. Accordingly, the Court rejects it.

Defendant mischaracterizes Plaintiff's claim when it argues that Count Three impermissibly attempts to use the FDCPA "as a means to enforce" Virginia law. (Mot. at 5.) Though Plaintiff's cause of action under the FDCPA turns to § 55.1-321 to illuminate why Defendant lacked a "present right to possession" of her property, Count Three asserts an independent violation of the FDCPA under § 1692f(6)(A). Plaintiff's Amended Complaint does not, as Defendant argues, assert that "a violation of Section 55.1-321 of the Virginia Code constitutes a *per se* violation of the FDCPA." (Reply at 2.) Instead, it is only because the FDCPA fails to define "present right to possession" that Plaintiff turns to state law at all. Indeed, as one of the cases that Defendant cites explains:

9

> [T]he more important and indeed decisive point is that the FDCPA does not define the phrase "present right to possession." Repossession rights are governed by the relevant state's property and contract law, so in the absence of an FDCPA-specific rule, we must look to state law to determine whether a repossessor had a present right to possess the property at the time it was seized.

*PAR, Inc.*, 954 F.3d at 968.

The other cases upon which Defendant relies lend little support to its argument. In *Richards v. New Rez*, for example, the court rejected an effort by the plaintiff to shoehorn a violation of 12 U.S.C. § 2605(c) — which requires that transferee loan servicers timely notify borrowers of the transfer — into an FDCPA claim under § 1692f's general prohibition of "unfair or unconscionable" debt collection practices. 2022 WL 657568, at *19. Plaintiff's claim here proves easily distinguishable, however, as Plaintiff does not rely on § 1692f's general prohibition of unfair practices to support her cause of action. (Am. Compl. ¶¶ 75-81.) Rather, Plaintiff seeks to hold Defendant liable for conduct explicitly proscribed by § 1692f(6)(A), a provision not at issue in *New Rez*. 2022 WL 657568, at *8-20. *Richards v. PAR* again proves instructive:

> [Section 1692f's] broad and vague language does not transform every violation of state or federal law into a violation of the FDCPA. Nothing about the general phrase "unfair or unconscionable" requires reference to state law, but elsewhere the FDCPA contains more specific provisions that *do call for an inquiry into state law*. As we've explained, § 1692f(6)(A) is one of them.

954 F.3d at 969 (emphasis added).

The Court finds Defendant's reliance on *Carlson v. First Revenue Assur.*, 359 F.3d 1015 (8th Cir. 2004), similarly unpersuasive. There, the Eighth Circuit held that the defendant debt collector did not violate Minnesota debt collection law where it failed to obtain a license for the Seattle, Washington post office box at which it received payments from debtors. *Id.* at 1018. Because the plaintiff failed to establish a violation of Minnesota law, the court likewise rejected his FDCPA claim for alleged "false or misleading representation[s]" in violation of § 1692e. *Id.*

Further discussing the plaintiff's FDCPA claim in dicta, however, the court went on to

10

state that "even if [the debt collector] was violating Minnesota law . . . that violation would not constitute a false or misleading representation [under § 1692e]." *Id.* Because the Seattle post office box belonged to the defendant debt collector, the Court noted, debtors knew to whom they were mailing payments — license notwithstanding. *Id.* The defendant therefore was "not misleading debtors about where their payments are being sent or into whose bank account they are being deposited" — the type of misleading conduct that might have established a violation of § 1692e. *Id.* "The FDCPA was designed to provide basic, overarching rules for debt collection activities," the court concluded, "it was not meant to convert every violation of a state debt collection law into a federal violation." *Id.*

Defendant quotes the above conclusion — again, issued in dicta — in support of its contention that Plaintiff cannot rely on a Virginia statute in pleading her FDCPA claim. (Reply at 2.) But the Eighth Circuit's conclusion that not all violations of state debt collection law constitute violations of the FDCPA hardly amounts to a holding that whatever violates state law cannot also violate the Act. *See Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1330 (S.D. Al. Feb. 7, 2013) ("[M]any states provide direct protection from various debt collection practices, yet conduct violating these state laws may also violate the Act.") Moreover, the purpose underlying the Minnesota law at issue in *Carlson* — "ensur[ing] that if a collection agency abuses its license, Minnesota regulators know where to find it" — distinguishes that law from the Virginia statute at issue here, which regulates disclosures to debtors themselves, not regulators. 359 F.3d at 1018; Va. Code § 55.1-321(F). While the Court understands why a collection agency's failure to comply with a law intended to facilitate communication between regulators and debt collectors would not necessarily mislead consumers, the Court simultaneously grasps that a trustee's failure to supply adequate notice to a debtor in advance of

11

a foreclosure sale may then effect a wrongful dispossession when the trustee later proceeds with the sale. 15 U.S.C. § 1692f(6)(A). The two conclusions are not mutually exclusive, as Defendant appears to imply. (Reply at 2.)

The core issue remains whether the Court may look to state law to determine if a debt collector enjoyed a present right to possession over the seized property at the time of repossession. Plaintiff cites numerous cases from across the lower courts suggesting the answer is "yes," and Defendant fails to convincingly rebut Plaintiff's showing. *See Westbrook v. NASA Fed. Credit Union*, 2019 WL 1056356, at *3 n.3 (N.D. Ala. Mar. 6, 2019), *aff'd*, 799 F. App'x 722 (11th Cir. 2020) (collecting cases). Because Plaintiff may premise her allegation that Defendant lacked a "present right to possession" of her property under § 1692f(6)(A) on Defendant's alleged failure to comply with Virginia Code § 55.1-321, the Court now turns to consider whether Plaintiff alleges sufficient facts to support a plausible inference that Defendant in fact failed to comply with the Virginia statute.

### 2. Plaintiff Alleges Sufficient Facts to Support an Inference that Defendant Failed to Comply with Virginia Code § 55.1-321

Defendant next argues that even if Plaintiff properly premises her FDCPA claim on an alleged violation of § 55.1-321, "the Court should find as a matter of law that RAS complied with all terms [in § 55.1-321] that are applicable to a reverse mortgage." (Mot. at 6.) The Court declines Defendant's invitation, for two reasons. First, a motion to dismiss is not the proper setting for the Court to resolve factual disputes. *Martin*, 980 F.2d at 952. Second, Plaintiff's Amended Complaint, viewed in the light most favorable to Plaintiff, alleges sufficient facts to support an inference that Defendant failed to provide proper notice under § 55.1-321.

Defendant maintains that "[s]ince a borrower in a reverse mortgage does not make any payments . . . there can be no 'total amount of principal, interest, costs, and fees due in arrears'"

12

associated with a reverse mortgage.[4] (Mot. at 6) (quoting Va. Code § 55.1-321(F)). It follows, Defendant argues, that it could not have included such information in the October 2021 Notice to Plaintiff. (Mot. at 6.) Defendant thus contends that by including "the remaining total principal balance due on the instrument" in the Notice, Defendant effectively included all of the information required by § 55.1-321, as none of the other information required by the statute existed for Plaintiff's Reverse Mortgage. (Mot. at 7.)

Here, Defendant invites the court to resolve a factual dispute and adjudicate the merits of Plaintiff's claim; the Court declines to do so. *See Martin*, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts [or] the merits of a claim.").

Plaintiff alleges that her Reverse Mortgage required that she make payments to Champion for flood insurance premiums that Champion paid on her behalf. (Am. Compl. ¶ 24-31.) Plaintiff further alleges that the October 2021 Notice that she received in advance of the foreclosure sale failed to state, among other omissions, the date and amount of the last payment that Champion received from Plaintiff. (Am. Compl. ¶¶ 34-35.) Virginia Code § 55.1-321 requires that the notice which precedes a sale in execution of a deed of trust convey such information. Thus, Plaintiff alleges sufficient facts for the Court to plausibly infer that Defendant failed to provide proper notice under § 55.1-321. Accordingly, the Court will not

---

[4] Defendant couples this argument with the bald assertion that "Section 55.1-321, by its very terms, does not apply to reverse mortgages." (Mot. at 6.) Defendant cites no legal authority in support of its assertion, and the contention proves plainly inconsistent with the statute's first sentence, which provides that before a sale by a trustee, "the trustee or the party secured shall give written notice of the time, date, and place of *any proposed sale in execution of a deed of trust*." Va. Code § 55.1-321(A) (emphasis added). The statute offers no exemption for reverse mortgages, and the Court finds that Plaintiff allegations, coupled with facts evident from the face of the October 2021 Notice, demonstrate that Defendant acted pursuant to the Deed of Trust when it conducted the December 6, 2021 foreclosure sale of Plaintiff's property. (Mot. Ex. A at 1-2; Compl. ¶¶ 33, 48.)

13

dismiss Count Three on these grounds.

### 3. Plaintiff Alleges Sufficient Facts to Support an Inference that Defendant Subjected Plaintiff to "Collection Activity" under the FDCPA

For its third parry at Count Three, Defendant challenges the adequacy of Plaintiff's allegations as it concerns the second element of an FDCPA claim — that is, Defendant argues that Plaintiff "fails to allege that RAS engaged in debt collection activity." (Mot. at 7.) The Court disagrees, finding that Plaintiff's factual allegations support the inference that Defendant subjected Plaintiff to collection activity when it foreclosed on her home. *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019). Although the FDCPA leaves the term "collection activity" undefined, the Supreme Court's 2019 decision in *Obduskey* speaks directly to the adequacy of Plaintiff's allegations. *Id.*

In *Obduskey*, the Supreme Court considered an FDCPA action levied against a law firm hired to bring nonjudicial foreclosure proceedings on Obduskey's Colorado home. *Id.* at 1034-35. Obduskey challenged the law firm's conduct under § 1692g(b) of the Act, arguing that the law firm failed to cease collection and verify Obduskey's debt after Obduskey challenged the debt's validity. *Id.* For its part, the law firm maintained that it need not comply with § 1692g(b), because "the mere act of enforcing a security interest through a non-judicial foreclosure proceeding does not fall under the [FDCPA]." *Id.* at 1035. The Court held for the defendant law firm, finding that the Act's two-part definition of the term "debt collector" evidenced Congress' intent "to treat security-interest enforcement differently from ordinary debt collection." *Id.* at 1037. Given that intent, the Court held that "*but for § 1692f(6)*, those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the Act." *Id.* at 1038 (emphasis added). The defendant law firm therefore could not be held liable under § 1692g(b). *Id.*

14

The caveat that the Supreme Court attached to its conclusion in *Obduskey* proves dispositive to the Court's analysis here. *Id.* Unlike Obduskey, Plaintiff brings her FDCPA claim in the instant case under § 1692f(6). (Am. Compl. ¶ 76.) Thus, while *Obduskey* might foreclose Plaintiff's action against Defendant if she had brought her FDCPA claim under a different provision of the Act, *Obduskey* explicitly endorses the viability of Plaintiff's cause of action as it is currently pled. 139 S. Ct. at 1036 ("No one here disputes that [the defendant law firm] is, by virtue of its role enforcing security interests, at least subject to the specific prohibitions contained in § 1692f(6)."); *see also Cunningham v. RAS Crane, LLC*, 2020 WL 9810008, at *1 (N.D. Ga. February 3, 2020) ("Foreclosing on a security interest is not debt collection activity within the meaning of the FDCPA *except for the purposes of the provisions of 15 U.S.C. § 1692f(6).*") (cleaned up) (emphasis added). So long as Plaintiff's factual allegations support an inference that Defendant enforced a security interest when it foreclosed on her home, Plaintiff adequately pleads that Defendant subjected her to a "collection activity" under the Act. *Obduskey*, 139 S. Ct. at 1038.

And indeed, Plaintiff's allegations, in combination with facts that the Court draws from the October 2021 Notice, prove sufficient for the Court to conclude that Defendant enforced a security interest by foreclosing on Plaintiff's home. (Am. Compl. ¶¶ 16-17, 45, 75-81; Mot. Ex. A at 1-2.) The October 2021 Notice to Plaintiff makes clear that the Deed of Trust on Plaintiff's home served as a security interest for Champion's $199,500 Note. (Mot. Ex. A at 1-2.) Moreover, Plaintiff alleges in her Amended Complaint that Defendant "foreclosed on [her] home" pursuant to the Deed of Trust, for which Defendant served as substitute trustee. (Am. Compl. ¶ 16-17, 48; Mot. Ex. A at 1-2.) Together, these facts support an inference that Defendant enforced a security interest by foreclosing on Plaintiff's home, thus subjecting

15

Plaintiff to a collection activity regulated by § 1692f(6). *Obduskey*, 139 S. Ct. at 1036.

Defendant's argument on this point misunderstands Plaintiff's claim and thus fails to provide adequate grounds for dismissal. (Mot. at 7-10.) In brief, Defendant argues that the October 2021 Notice to Plaintiff, in which Defendant informed Plaintiff of the impending foreclosure sale, contains none of the hallmarks "of an attempt to collect a debt." (Mot. at 9-10) ("While the October 2021 Notice contains boilerplate disclaimer language and identifies the noteholder, it contains no express demand for payment, does not set forth the amount of the debt, does not identify the procedure for validating the debt, and does not identify to whom the debt should be paid.") The Notice, Defendant continues, therefore provides insufficient factual evidence from which the Court can infer that RAS subjected Plaintiff to a collection activity. (Mot. at 10.)

Irrespective of the merits of Defendant's argument, the Court can safely discard it. Defendant wholly misstates the facts from which Plaintiff invites the Court to infer that Defendant subjected Plaintiff to a collection activity. Plaintiff does not contend that the October 2021 letter itself constituted a collection activity under the FDCPA. (Resp. at 9.) Rather, as described above, Plaintiff argues that Defendant subjected her to a collection activity by foreclosing on her home. (Resp. at 9.) Whether the October 2021 Notice itself may serve as the "collection activity" undergirding an FDCPA claim therefore proves irrelevant to evaluating Plaintiff's claim. Accordingly, the Court will not dismiss Count Three on such grounds.

4. **Defendant's Affirmative Defenses under Contract Law Prove Inapplicable and Irrelevant**

Defendant puts forth two arguments for dismissal under the common law of contracts. (Mot. at 10.) The arguments begin with a common premise — namely, that Plaintiff's agreement to pay her flood insurance premium via a monthly repayment plan constituted a modification to

16

her Reverse Mortgage contract with Champion. (Mot. at 10-11.) Defendant then identifies two affirmative defenses to contract formation, maintaining that both defenses prove applicable here. (Mot. at 10-12.)

First, Defendant argues that the repayment plan that Plaintiff negotiated with Champion lacked consideration flowing from Plaintiff. (Mot. at 10.) Second, Defendant argues that the repayment plan constituted an oral modification to a contract in land, and to satisfy the statute of frauds, "any contract to modify [a] mortgage lien would . . . need to be in writing." (Mot. at 10.)

Defendant argues that both affirmative defenses dictate that Plaintiff's repayment plan constituted an invalid and unenforceable modification to her Mortgage contract with Champion. (Mot. at 10-11.) And because Plaintiff therefore could not enforce the repayment plan against Champion, Champion could exercise its legal right to foreclose on Plaintiff's home when Plaintiff failed to pay her insurance premiums in full. (Mot. at 11-12.) Thus, RAS acted lawfully when it foreclosed on Plaintiff's home on Champion's behalf. (Mot. at 12.)

Unfortunately for Defendant, its arguments under contract law prove entirely irrelevant to Plaintiff's claims under the FDCPA. Plaintiff brings a single cause of action against Defendant — "Violation of the FDCPA, 15 U.S.C. § 1692f." (Am. Compl. ¶ 9.) Plaintiff's cause of action thus sounds in tort, not contract. *See Dotson v. Ad Astra Recovery*, 2022 WL 2079889, at *1 (W.D. Ok. June 9, 2022) ("[A] claim for violation of the FDCPA could exist absent any contract and thus it is a pure tort claim."). Moreover, Plaintiff's Amended Complaint contains no allegation that Defendant breached a contract with Plaintiff. (Am. Compl. ¶¶ 75-81.) Nor does Plaintiff's FDCPA claim necessarily depend upon a finding that Champion breached its contract with Plaintiff.

In sum, while Plaintiff asserts a breach of contract claim against Champion in Count One,

17

Plaintiff's FDCPA claim against Defendant alleges unlawful activity distinct from Champion's alleged breach. (Am. Compl. ¶¶ 50-57.) Defendant's arguments based on affirmative defenses to contract formation and modification therefore prove irrelevant. The Court thus will not dismiss Plaintiff's claim on such grounds.

### 5. Defendant's Assertion that Plaintiff Fails to Allege a Claim for Intentional Infliction of Emotional Distress Proves Irrelevant

As its fifth and final ground for dismissal, Defendant argues that "Plaintiff fails to plead a plausible claim for intentional infliction of emotional distress against RAS." (Mot. at 13.) Plaintiff asserts no such cause of action in her Amended Complaint, however. (Am. Compl. ¶¶ 75-81.) Defendant's challenge to the Amended Complaint therefore proves irrelevant, and the Court will not dismiss Count Three on such grounds.

### IV. CONCLUSION

For the reasons set forth above, the Court will DENY Defendant RAS' Motion to Dismiss (ECF No. 23). Plaintiff's Amended Complaint will move forward against RAS on Count Three.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 15, 2022